CPS Definitions - People and Households - U.S. Census Bureau

Secondary individuals

Stop family

Subfamily

Tenure

Undocumented immigrants or illegal aliens

Unemployed people

Units in structure

Unmarried couple

Unrelated individuals

Vocational school enrollment

Voting, people eligible to register

Voter, reported participation

Voter, reported registration

Work Experience

**Footnotes**

[1] For a detailed discussion of the original SSA poverty thresholds, see Mollie Orshansky, Counting the Poor: Another Look at the Poverty Profile, Social Security Bulletin, vol. 28, no. 1, January 1965, pp. 3-29 (reprinted in Social Security Bulletin, vol. 51, no. 10, October 1988, pp. 25-51); and Who's Who Among the Poor: A Demographic View of Poverty, Social Security Bulletin, vol. 28, no. 7, July 1965, pp. 3-32.

[2] Poverty thresholds for 1959-1967 were recalculated on this basis, and revised poverty population figures for those years were tabulated using the revised thresholds. These revised 1959-1967 poverty population figures have been published in Census Bureau reports issued since August 1969 (including the present report). Because of this revision, poverty statistics from documents dated before August 1969 are not comparable with current poverty statistics.

[PDF] or 🔁 denotes a file in Adobe's Portable Document Format. To view the file, you will need the Adobe® Reader® 🔁 available free from Adobe.

Source: U.S. Census Bureau | Current Population Survey (CPS) | Last Revised: 2013-10-29T09:34:40.103-04:00

**In re STAR DYNAMICS CORPORATION, Debtor.**

No. 13–59657.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Jan. 24, 2014.

Thomas R. Allen, Allen Kuehnle Stovall & Neuman LLP, Columbus, OH, Richard K. Stovall, Columbus, OH, Michael J. Sullivan, Womble Carlyle Sandridge & Rice LLP, Atlanta, GA, for Debtors.

Lawrence Hacket, Columbus, OH, Mary Anne Wilsbacher, USDOJ–Office of the U.S. Trustee, Columbus, OH, for U.S. Trustee.

*ORDER DENYING MOTION TO RE- MAND (DOC. NO. 55) AND MOTION FOR RELIEF FROM STAY (DOC. NO. 48) OF BAE SYSTEMS TECH- NOLOGY SOLUTIONS & SER- VICES, INC. AND SETTING A STA- TUS CONFERENCE*

CHARLES M. CALDWELL, Chief Judge.

On January 8 and 9, 2014, the Court conducted an evidentiary hearing on the above-captioned Motions filed by BAE Systems Technology Solutions & Services Inc. ("BAE") and Responses filed on be- half of STAR Dynamics Corporation ("Debtor"). Based upon the evidence, pleadings filed and statements of counsel, the Court finds and concludes that the Motion to Remand and Motion for Relief from Stay should be denied. A summary of the relevant facts, procedural steps, and the Court's ruling follow.

The Debtor develops, sells, and services instrumentation radar systems for missile test ranges utilized by the United States and foreign governments. Located princi- pally in Hilliard, Ohio, with satellite offices in Herndon, Virginia and Sandestin Flori- da, the Debtor has 112 full-time employ- ees. According to Debtor's first-day mo- tions and as of November 30, 2013, it has assets of $28,470,788.13, liabilities of $50,892,360.12 and gross sales of $8,140,140.93. BAE is an American sub- sidiary of a global-level defense contractor based in Great Britain, with more than 50,000 employees world-wide. BAE has its headquarters in Arlington, Virginia, and like the Debtor, is engaged in the radar range business for the testing of missiles and other weaponry.

On November 16, 2012, a Complaint for Injunctive Relief and Damages was filed on behalf of BAE against the Debtor. This litigation was commenced in the Franklin County, Ohio Court of Common Pleas (*BAE Systems Technology Solutions & Services Inc. v. STAR Dynamics Corpo- ration*, Case No. 12 CV 14372). Essential- ly, BAE alleges that five of its former employees went to work for the Debtor in 2012 and took with them technology in- volving the military-related radar business. BAE sought injunctive relief to preclude the Debtor's use of any alleged stolen technology as well as monetary damages. Most recently, BAE requested leave to amend its complaint to add parties.

Regarding the status of the Court of Common Pleas litigation and according to Debtor's special counsel, depositions have not been completed, including as many as six expert witnesses, and there has been no discovery on the damages portion of the complaint. Also, there is an ongoing dis- covery dispute in Florida state courts in- volving the five former BAE employees. The technologically complex nature of the dispute is amply demonstrated by the par- ties' agreement to the installation of a software program developed to identify BAE's electronic documents in possession of the Debtor. Indeed, a pool of electronic information has been identified, the Debtor has challenged some of the assessments that materials originated from BAE's sys- tems, and BAE must still respond to these challenges.

Although BAE obtained a preliminary injunction from the Court of Common Pleas prohibiting the Debtor from pursu- ing certain defense-related contracts, it ex- pired by the time the Debtor filed the instant Chapter 11 proceeding on Decem- ber 10, 2013. Nine days later on Decem- ber 19, 2013, BAE filed its Motion for Relief from Stay to continue the litigation in state court, and on the next day, Decem- ber 20, 2013, the Debtor filed its Notice of Removal. At this juncture there is no restraint upon the Debtor's ability to pur- sue any and all contracts. The parties are prohibited from proceeding any further in

the Court of Common Pleas until the dispute is remanded, and this Court has the ability to issue orders and commence processes to bring before it all proper parties. *See* Fed. R. Bankr.P. 9027(c), (e)(1).

Since the bankruptcy filing, the Debtor has obtained the appointment of Sagent Advisors, LLC ("Sagent") to arrange a sale of the business as a going concern. To this end, Sagent has gathered and made available to approximately 25 prospective purchasers marketing data for the Debtor's business. Sagent has obtained non-disclosure agreements from ten prospective purchasers, and established January 10, 2014, as a deadline by which parties are required to express their initial interests. It is envisioned that from this pool the most promising prospects will receive management presentations and tours of the Debtor's facilities. Allowing for approximately a month for due diligence, it is anticipated that expressions of interest will be refined to the form of proposed asset purchase agreements by late February, 2014. Counsel for the Debtor anticipates that a motion to approve any proposed sale will be filed in time to be closed during March 2014.

Critical to any sale of the Debtor as a going concern, is its ability to continue to bid on contracts and utilize technologies that were temporarily enjoined by, and subject to, the litigation commenced in the Court of Common Pleas. Specifically, the Debtor projects that its revenue for the years of 2014–2016 will be substantially enhanced by such bids. Given the Debtor's current deteriorating financial condition, it is only this potential future performance as a going concern that makes it valuable on the open market. According to the testimony of Mr. Chris Oliver, a Sagent advisor, absent this potential, the Debtor will be left only with the prospect of liquidating its assets.

While the parties have significant legal differences, their interests are aligned in that they each assert exclusive ownership of technology that must be timely and freely marketed to realize its full value. In the Debtor's bankruptcy schedules filed on January 14, 2014, it has identified intellectual property, proprietary technology and radar products it claims as property of the estate. Some of this intellectual property may be subject to the claims of BAE. Also, the Debtor has scheduled executory contracts for delivering and supporting radar systems that were subject to the Court of Common Pleas litigation. The BAE litigation is detailed in the Debtor's Statement of Financial Affairs, and BAE is scheduled as a general unsecured creditor in an unknown amount, and as holding disputed claims based upon the alleged misappropriation of trade secrets.

To the extent any valuable technology has been misappropriated, significant time and money will be required to identify the scope, and whether it has been combined with the intellectual property of others to create additional products. Further, upon the bankruptcy filing an estate was created comprised of all the Debtor's legal or equitable interests. *See* 11 U.S.C. § 541(a)(1). This all leads to the most fundamental bankruptcy question—what does the Debtor own that will make it marketable as a going concern to maximize recovery for its creditors?

The parties are at odds over whether this Court or the Court of Common Pleas is better suited to answer this question. BAE asserts that this Court is either required, or should on a discretionary basis, abstain and remand the removed litigation to allow the Court of Common Pleas to decide what, in effect, constitutes property of the estate. On the other hand, the Debtor contends that because it must sell the business as a going concern to realize

any value, this fundamental bankruptcy question of what it owns must be resolved by this Court, and that only this Court can approve and effectuate any sale of the company free and clear of all interests under Section 363 of the United States Bankruptcy Code. Such sales have long been an attractive and viable means to preserve a business, shield purchasers from pre-petition claims, and yield significant recoveries that fund Chapter 11 plans. In this manner, vital services and stable sources of employment are preserved. *See* 11 U.S.C. § 363(f).

■ Turning to applicable statutory provisions, the United States Code provides two means for federal courts to remand disputes to state courts: mandatory abstention and permissive abstention. Regarding mandatory abstention, federal courts are required to abstain and remand matters to state courts when six criteria are met:

1. There is a timely abstention motion;
2. A state law claim or cause of action;
3. No independent federal jurisdictional basis;
4. A claim that is "related to" but not "arising in" or "arising under" Title 11;
5. A parallel action commenced in state court; and
6. The action can be timely adjudicated by the state court.

28 U.S.C. § 1334(c)(2).

■ Federal Courts may permissively abstain, ". . . in the interest of justice, or in the interest of comity with State courts or respect for State law . . ." 28 U.S.C. § 1334(c)(1). To make this determination a variety of factors are considered and weighed in the balance. *Underwood v. United Student Aid Funds, Inc. dba, USA Funds (In re Underwood)*, 299 B.R. 471, 476 (Bankr.S.D.Ohio 2003). The factors include but are not limited to:

1. The effect that remand or abstention would have on the efficient administration of the bankruptcy estate;
2. The extent to which state law issues predominate over bankruptcy issues;
3. The difficulty and possibly unsettled nature of the applicable state laws;
4. The relatedness or remoteness of the issues to the bankruptcy case;
5. The substance, rather than form, of an asserted core proceeding;
6. The possibility of prejudice to the involuntarily removed parties;
7. The lack of a federal jurisdictional basis absent Title 11 (the bankruptcy code);
8. The likelihood and possibility of forum shopping; and
9. The existence of a right to a jury trial.

*Meritage Homes of Nevada, Inc. v. JPMorgan Chase Bank, N.A. (In re Meritage Homes Corp.)*, 474 B.R. 526, 572–73 (Bankr.S.D.Ohio 2012); *Grauman v. Smith (In re U.S. Physicians, Inc.)*, 2001 WL 793271, *2 (E.D.Pa. July 12, 2001); *Smith v. McLeskey (In re Bay Vista of Virginia, Inc.)*, 394 B.R. 820, 845–47 (Bankr.E.D.Va.2008); *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 383 (Bankr. E.D.Ark.2003).

As the Court expressed to the parties during a pretrial conference, the notice of removal placed their dispute before the United States District Court that, in turn, has referred all bankruptcy cases to this Court. Whether the dispute removed from the state court must be tried by a jury, and whether the reference should be withdrawn, are issues for another day. Rather, the paramount factor, that substantially outweighs all others at this juncture, is whether the dispute over who owns the technology and who can market the technology, can be adjudicated on a timely

basis in the Court of Common Pleas, such that the Debtor's efforts to return to financial health in bankruptcy are not placed in jeopardy. *See In re National Century Financial Enterprises, Inc., Inv. Litigation,* 323 F.Supp.2d 861, 880–86 (S.D.Ohio 2004). Typical considerations include the length of time the state court has expended on the case, the proximity to trial and ultimate resolution, and whether allowing the case to remain in state court will have any negative impact upon the bankruptcy proceeding. *Balcor/Morristown Limited Partnership v. Vector Whippany Assoc.,* 181 B.R. 781, 793 (D.N.J.1995) (noting that comity to a state court requires respecting that court's efforts to manage the case).

At the end of the trial the Court asked the parties to focus on this paramount issue, and how it can be addressed in the most efficient and timely manner either before this Court or the Court of Common Pleas. The post hearing memoranda of the parties both recognize that the investigation of the scope of any misappropriation must first be completed. BAE suggests upon remand to state court, that this process can be completed in four-five weeks, including all necessary depositions. BAE estimates that the dispute will be ready for jury trial in the Court of Common Pleas by mid-March 2014, and that the weeks of March 24 through April 21, 2014, are available on the state court's calendar. Such estimates are overly optimistic given that BAE has requested leave to amend the complaint to add parties, who will then need time to answer and conduct their own discovery, prior to any determination of the issues and trial on the merits. Also, the credibility of this aggressive schedule is called into question by the more than a year already spent in state court, without any final resolution.

Further, since the parties allowed the temporary injunction to lapse in the Court of Common Pleas, it will have to be re-newed, over Debtor's objections, prior to any trial. After the bankruptcy filing, those objections will invariably be cloaked by the Debtor's claims that the technology is property of the estate, that it is essential to reorganization before this Court, and that it should not be subject to any injunction, without regard to whether the state court can adhere to the BAE's proposed schedule. Even assuming a trial is possible in time for the Debtor to consummate a sale, there is no mention of the time and expense required to aid any jury to understand the associated technology, and there is no reference to measures to mitigate the inadvertent disclosure of commercially sensitive material during the jury deliberation process. Further, BAE did not offer projections on the time required to complete any appeals. In sum, it is unclear how the question of "who owns what" can be finally determined by the Court of Common Pleas in time, and without undue delay, prejudice, and harm to the Debtor's efforts to complete a going concern sale of its property free and clear of all interests and liens.

On the other hand, the Debtor has suggested that the parties agree to be bound by the technological findings of experts selected by the parties, or in the alternative that this Court appoint experts pursuant to Rule 706(a) of the Federal Rules of Evidence to determine the scope and value of any trade secret misappropriations. Under either method, the Debtor suggests that the experts' findings would aid this Court to determine whether any BAE technology has been misappropriated, and whether and under what circumstances any sale could be completed. Further, there are several procedural devices to answer the property of the estate question that may be employed by this Court or the Federal District Court prior to or in tandem with a bankruptcy going concern sale. There are also means to preserve BAE's

interests in obtaining any temporary or permanent injunctive relief. For example, Rule 7001 of the Federal Rules of Bankruptcy Procedures offers several procedural alternatives to resolve these disputes, including:

- 7001(2) proceeding to determine the validity, priority or extent of a lien or other interest;

- 7001(7) proceeding to obtain an injunction or other equitable relief;

- 7001(9) proceeding to obtain a declaratory judgment; and

- 7001(10) proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452.

The Court finds and concludes that, among all the factors for abstention, the paramount concern is that the dispute between the parties cannot be adjudicated in the Court of Common Pleas without substantial harm and delay to this bankruptcy proceeding and to Debtor's attempts to pay its creditors, preserve employment for a large workforce and continue to provide vital defense-related services. For these reasons, the Court denies the Motions to Remand and for Relief from Stay.

On **February 7, 2014, at 2:00 p.m.** in Courtroom B, 170 North High Street, Columbus, Ohio, the Court will conduct a status conference to discuss and establish a schedule for the timely adjudication of all disputes and issues between the parties.

**IT IS SO ORDERED.**